## BROWN BANK AND TRUST COMPANY *v.* HOLT *et al.*

1. Under the facts of this case, is was erroneous to charge as follows: "I also charge you, as a principle of law, that in order for one person to transfer stock held by that person to another person in a corporate bank, as to whether or not they would have a right to transfer it would depend upon the certificate of the stock; and if the certificate of the stock that was issued to Mrs. Brown stated how it should be transferred, then under the law those provisions and stipulations would have to be complied with."

2. There was sufficient evidence to authorize the submission to the jury of the question whether the plaintiff bank became bound by the acts and representations of its officers in connection with the sale of certain stock bought by the principal defendant.

(a) There may have been inaccuracies in some of the charges complained of and not specially discussed; but if so, they were not grave, and will doubtless be corrected on another trial.

3. There was no error in admitting the evidence of the husband of the purchaser of the stock, who acted as her agent in making the purchase, in regard to the representations made by the president and cashier of the bank making the sale.

4. The evidence was meager and unsatisfactory as to when the purchaser of the stock discovered the fraud which had been perpetrated upon her,

if there was any, and whether, after notice thereof, she acted with due promptness to obtain a rescission, or whether thereafter she continued to act as a stockholder. On another hearing this can be more fully developed.

JANUARY 16, 1915.

Complaint. Before Judge Park. Gwinnett superior court. December 18, 1913.

*J. A. Perry,* for plaintiff.

*I. L. Oakes* and *O. A. Nix,* for defendants.

LUMPKIN, J. The Brown Bank and Trust Company brought suit on a promissory note for $1,620 principal, payable to the order of the plaintiff, against Mrs. R. S. Holt as maker, and R. S. Holt as indorser. The defendants pleaded that the president and cashier of the bank sold to Mrs. Holt, through her husband as her agent, certain shares of stock in the bank, represented to be treasury stock, and took the note in suit for the purchase-price thereof; that the officers made false and fraudulent representations as to the condition of the bank and the value of the stock; and that she did not discover the real condition of the bank until about the time of its failure, some time after the purchase. They sought to have a rescission. The plaintiff contended that the stock was not sold for it, but that the president and cashier acted as the agents of their mother, who was another stockholder, in making the sale; and also denied fraud. The jury found for the defendants. The plaintiff moved for a new trial, which was refused, and it excepted.

1. One ground of the motion for a new trial requires a reversal. The presiding judge charged: "I also charge you, as a principle of law, that in order for one person to transfer stock held by that person to another person in a corporate bank, as to whether or not they would have a right to transfer it would depend upon the certificate of the stock; and if the certificate of the stock that was issued to Mrs. Brown stated how it should be transferred, then under the law those provisions and stipulations would have to be complied with." This was said in connection with instructions as to whether the transaction was in fact a loan of money by the bank to the purchaser of the stock, and whether the latter bought, not from the bank, but from the mother of the president and cashier, or whether those officers of the bank sold the stock as its stock and took the note in suit for the purchase-money. While the mode in which the stock of Mrs. Brown, the mother of the two bank officers,

was claimed to have been transferred was a circumstance which the jury might consider in arriving at the truth, and while in a controversy involving the legality or regularity of the transfer the rule laid down might have been applicable, yet if the purchaser bought from Mrs. Brown, and the note was given to the bank for money borrowed from it, as the plaintiff contended, and Mrs. Brown, having a certificate of stock which included fifty-nine shares, surrendered it to the bank, caused it to be canceled on the books of the company, and had issued to the purchaser a certificate for fifteen shares, received payment therefor, and has made no complaint, the mere fact that the blank form of transfer on the back of the certificate was not filled out as to any number of shares transferred would not invalidate the transaction. In the connection in which this charge was given, and without explanation, it might have misled the jury.

2. There may have been slight inaccuracies in some of the charges complained of in other grounds of the motion; but when taken in connection with the context, they were not serious. There was evidence authorizing the submission to the jury of the question whether the bank became bound by the action of its officers in connection with the transaction. The charge complained of in the tenth ground of the motion was probably a little broader than the issues required, and the use of the expression "absolutely void" was somewhat stronger than desirable in a case involving an issue of rescission of a contract on account of fraud. The charge complained of in the ninth ground is not framed with exact accuracy. We take it that the expression "if they did afterward sell the stock" means as stock of the bank. The mere issuing of a new certificate might apply to a sale by one stockholder to another, where the original certificate was delivered up and canceled and new certificates issued. But if the bank's officers sold the stock as the bank's stock, not as that of another stockholder, though this may have been unauthorized, yet if the bank issued a certificate for such stock to the purchaser who so bought, took the purchaser's note for the purchase-price payable to itself, and has brought and with knowledge of the facts is pressing suit to enforce the payment, this would operate as a ratification of the acts of its officers in the transaction. It could not ratify in part by claiming the benefit of such a trade, and at the same time repudiate representations which may have

been made by its officers as to the condition of the bank and the value of the stock or the like, if any were made to the purchaser or her agent in the progress of the transaction, and induced the purchase.

3. There was no error in admitting the evidence of R. S. Holt, the husband of the purchaser, who acted as her agent in making the purchase, as to the representations made by the president and cashier of the bank in making the sale.

4. The evidence was meager and unsatisfactory as to when the purchaser discovered that the representations made to her agent were fraudulent, if they were so, and what action she took upon making such discovery, whether she took steps to rescind with due promptness, or whether, after notice of the fraud, she continued to act as a stockholder. Considering the date of the discovery as pleaded and the evidence as to her giving a proxy some time after the failure, she may have so acted as to prevent a rescission. On another trial this can be fully investigated.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*